[Cite as *State v. Chapman*, 2013-Ohio-357.]

STATE OF OHIO        )                  IN THE COURT OF APPEALS
)ss:               NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

STATE OF OHIO                       C.A. No.     26175

      Appellee

      v.                             APPEAL FROM JUDGMENT
                                     ENTERED IN THE
JOHNNY B. CHAPMAN, JR.        COURT OF COMMON PLEAS
                                     COUNTY OF SUMMIT, OHIO
      Appellant               CASE No.     CR 11 06 1615

DECISION AND JOURNAL ENTRY

Dated: February 6, 2013

CARR, Judge.

**{¶1}** Johnny Chapman appeals his conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

**{¶2}** This case arises from an incident that occurred in the early morning hours of June 20, 2011, in which two boys were robbed at gunpoint as they were walking on Vernon Odom Blvd. in Akron. The substantive facts of the incident are set forth below.

**{¶3}** On June 30, 2011, Chapman was indicted on two counts of aggravated robbery with firearm specifications, one count of tampering with evidence, one count of having weapons while under disability, one count of carrying concealed weapons, and one count of obstructing official business. On July 20, 2011, the Grand Jury returned a supplemental indictment charging Chapman with one count of attempted murder with a firearm specification, and one count of felonious assault with a firearm specification. After a jury trial, Chapman was found guilty of

both counts of aggravated robbery with the related firearm specifications, tampering with evidence, carrying a concealed weapon, and obstructing official business. The jury found Chapman not guilty of the charges in the supplemental indictment, and the charge of having weapons while under disability was dismissed prior to trial. Chapman was sentenced to a total of 13 years of incarceration in this case. The trial court further specified that Chapman's sentence in this case was ordered to be served consecutively to his sentence in Case No. CR 09 03 0973(A), for a total sentence of fourteen years.

{¶4} After filing a timely appeal, Chapman now raises seven assignments of error. We rearrange some assignments of error to facilitate review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT VIOLATED MR. CHAPMAN'S RIGHT TO A SPEEDY TRIAL IN VIOLATION [OF] HIS RIGHTS UNDER THE SIXTH AND FOURTE[E]NTH AMENDMENT[S] TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.

{¶5} In his first assignment of error, Chapman argues that the trial court violated his speedy trial rights when it sua sponte continued the trial date because the court would be occupied with an older criminal case. This Court disagrees.

{¶6} "When reviewing an appellant's claim that he was denied his right to a speedy trial, this Court applies the de novo standard of review to questions of law and the clearly erroneous standard of review to questions of fact." *State v. Downing*, 9th Dist. No. 22012, 2004-Ohio-5952, ¶ 36; *State v. Hamlet*, 9th Dist. No. 04CA008527, 2005-Ohio-3110, ¶ 15.

{¶7} The right to a speedy trial by the State is guaranteed to a criminal defendant by the Sixth and Fourteenth Amendments to the United States Constitution. *Klopfer v. North*

*Carolina*, 386 U.S. 213, 222-223 (1967). The same right is conferred to a criminal defendant by Section 10, Article I, Ohio Constitution. *State v. O'Brien*, 34 Ohio St.3d 7, 8 (1987). A criminal defendant may waive his right to a speedy trial if it is knowingly, voluntarily and intelligently made. *State v. Adams*, 43 Ohio St.3d 67, 69 (1989). The waiver must also be expressed in writing or made in open court on the record. *State v. King*, 70 Ohio St.3d 158 (1994), syllabus.

{¶8} R.C. 2945.71 et seq. is an enforcement mechanism to make sure that a criminal defendant's constitutional right to a speedy trial is upheld. *State v. Pachay*, 64 Ohio St.2d 218 (1980), syllabus. R.C. 2945.71 dictates the time limits in which a defendant must be brought to trial. R.C. 2945.71(C)(2) provides that "[a] person against whom a charge of felony is pending *** [s]hall be brought to trial within two hundred seventy days after the person's arrest." R.C. 2945.71(E) addresses the computation of time and provides that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days." Time is calculated to run the day after the date of arrest. *State v. Friedhof*, 9th Dist. No. 2505-M, 1996 WL 385612 (July 10, 1996), citing *State v. Steiner*, 71 Ohio App.3d 249, 250-251 (9th Dist.1991). *See also* Crim.R. 45(A).

{¶9} Pursuant to R.C. 2945.73, if a defendant is not brought to trial within the prescribed time period, the trial court must discharge the defendant upon motion for dismissal prior to or at the commencement of trial. R.C. 2945.73(B). However, the time within which a defendant must be brought to trial can be tolled.

{¶10} R.C. 2945.72(H) provides that the statutorily prescribed time for a speedy trial may be lengthened by any period of continuance granted on the accused's own motion, or by any reasonable period granted other than on the accused's motion. *See also Hamlet* at ¶ 18.

**{¶11}** Furthermore, this Court has held that "a motion to suppress tolls the speedy trial clock from the time the defendant files the motion until the trial court disposes of the motion, as long as the trial court's disposition occurs within a reasonable time." *State v. Kolvek*, 9th Dist. No. 21808, 2004-Ohio-2515, ¶ 7, citing *State v. Arrizola*, 79 Ohio App.3d 72, 76 (3d Dist.1992). Additionally, R.C. 2945.72(E) provides that the statutorily prescribed time for a speedy trial may be lengthened by "[a]ny period of delay necessitated by reason of a * * * motion, proceeding, or action made or instituted by the accused[.]"

**{¶12}** In this case, Chapman was arrested on June 20, 2011, and remained in jail until the commencement of trial on October 11, 2011. He was, therefore, entitled to the triple-count provision in R.C. 2945.71(E), and the State was required to bring him to trial within 90 days absent any tolling events. Prior to the expiration of the speedy trial deadline, on September 15, 2011, Chapman filed a motion to suppress, a motion to sever, a motion in limine, and a motion for funds for a firearms expert. On Monday, September 26, 2011, Chapman appeared before the trial court for a pretrial conference. At the outset of the hearing, the State noted the matter was set to go to trial on Wednesday, September 28, 2011, but that it appeared the trial court had an older case scheduled for trial that day as well. The State also noted that it had received copies of Chapman's motions. The court acknowledged that it would be in trial on an older case on September 28, and that a new trial date had to be set.

**{¶13}** In response, defense counsel stated, "It's [Chapman's] intention to go forward with trial on Wednesday. I did explain to him that notwithstanding the 90 days, because he's been in custody since his arrest, that if there's an older case, that there's also a guy in custody, that case will take precedence and our case will have to be reset. It's our position that we plan on going forward Wednesday, although we do have issues of the motion to suppress [and] the

motion to sever because there's basically a robbery case involving two young men and then an attempted murder involving one other person." After a pause in the proceedings, defense counsel continued, "my client doesn't feel that he wants any motions being filed or litigated due to the fact that it will simply delay the trial in this case. I think [i]f we could get a trial date as soon as there's an availability, if I could set the hearing before that time and then if we withdraw it after going over the evidence with my client, we can withdraw it and still have the trial date." The trial court then responded, "I understand your desire to try the case quickly; I do. But we have another gentleman [who] has been in jail for a much longer time, and it's a retrial. And then we have another trial set for Wednesday. * * * So the Court has to follow that order when people are in custody, even though the 90 days is generally a hard-and-fast rule, you know, you can only try one case at a time. * * * What I'll do is set the trial as soon as we can. And it would be the Court's plan to try to rule on these motions and get that all handled before your trial date."

{¶14} Chapman himself stated on the record that he never wanted defense counsel to file "any motions or any continuances." The trial judge then explained that even if no motions had been filed, there were still older cases that had to be heard prior to Chapman's trial. After the trial court offered to allow Chapman to consult with counsel regarding the pending motions, Chapman indicated he had made his decision. The trial judge stated, "That is not the reason the Court is continuing your case. It really doesn't have anything to do with the motions. It's because I'll be in trial on another case." After a side-bar discussion, the trial court stated on the record that the trial would be set for October 11, 2011. Chapman then reiterated that he wanted defense counsel to withdraw all of the motions that had been filed. The trial judge asked for clarification if Chapman's request included the motion to sever trials, and encouraged Chapman to discuss that issue with defense counsel to make sure he understood the ramifications.

Chapman responded that he thought it would be better to try the cases together, and that he felt like he would "get through it." Defense counsel stated on the record that he was opposed to withdrawing the motions, but he understood that Chapman had his own reasons for withdrawing the motions. At the conclusion of the September 26, 2011 hearing, the trial court ordered the motions withdrawn.

{¶15} The Supreme Court of Ohio has held that "[w]hen [] granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial." *State v. Mincy*, 2 Ohio St.3d 6 (1982), syllabus. Here, on September 28, 2011, prior to the expiration of the speedy trial deadline, the trial court issued a journal entry stating, "upon due consideration of this Court, and for good cause shown, IT IS HEREBY ORDERED that the jury trial set in this case [] be continued until Tuesday, October 11, 2011 at 9:00 A.M., which may fall outside the Defendant's speedy trial deadline, due to the Court already engaged in trial in *State v. Earl Wayne Martin*, Case Number CR 11 02 0469." Chapman had several motions pending before the court at the time of the September 26, 2011 hearing that had tolled time for speedy trial purposes. Even after Chapman withdrew the motions at the hearing, it was necessary for the trial court to continue the trial to October 11, 2011, because the court would be in trial on an older case. As the trial court's order was journalized within the ninety day window and specifically identified the older case which needed to be heard prior to Chapman's case, the trial court did not violate Chapman's speedy trial rights. *Id*.

{¶16} The first assignment of error is overruled.

## ASSIGNMENT OF ERROR V

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECOR[]D SUFFICIENT EVIDENCE TO SUPPORT THE CHARGES LEVIED AGAINST MR. CHAPMAN IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

## ASSIGNMENT OF ERROR VI

MR. CHAPMAN'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE POSSESSION IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION. (sic)

{¶17} In his fifth and sixth assignments of error, Chapman argues that his robbery convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.

{¶18} Chapman combined his fifth and sixth assignments of error in his merit brief, and advanced an argument focusing on whether he was properly identified as one of the men who perpetuated the robberies. Specifically, Chapman argued that only one of the two victims was able to identify Chapman, and that was only after the victim saw him across the street for a matter of two seconds. Chapman further notes that while both victims described their assailants as "black men and wearing black clothes," neither victim gave a description of the assailant that included braided hair. Chapman also asserts that while both victims identified the guns used on them as black guns, the gun Chapman tossed as the police pursued him was chrome colored.

{¶19} Chapman was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which states, "No person, in attempting or committing a theft offense, as defined in section 2913.01 or the Revised Code, or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's

control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶20} A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. No. 19600, 2000 WL 277908 (Mar. 15, 2000). "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997) (Cook J., concurring). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶21} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, ¶ 11. Rather,

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a "thirteenth juror," and disagrees with the factfinder's resolution of the conflicting testimony. *Id.*

*State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, ¶ 5.

**{¶22}** This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

**Sufficiency**

**{¶23}** The evidence presented at trial demonstrated that in the early morning hours of June 20, 2011, Chapman and another man robbed two teenage boys at gunpoint. Steven Thomas, who was fifteen years old at the time of the incident, and Christian Williams, who was eighteen at the time of the incident, were walking to Thomas' home on White Avenue in Akron when they were confronted by two men with guns. Steven testified that the two assailants crossed the street together and approached the boys as they walked on the sidewalk. As Steven walked behind Christian, one of the men pulled a gun on Christian, and the other man put a gun in Steven's back. The man who stuck the gun in Steven's back checked Steven's pockets and shoes, but found nothing. The other man stuck a gun in Christian's stomach and removed the contents of his pockets, which included his cell phone, his identification card, and his social security card. At trial, Steven described the man who stuck the gun in his back as a black man wearing black clothes, with a Bluetooth earpiece. Steven testified that he was able to see the individual's face when he first crossed the street. Steven further testified that he also briefly saw the man who robbed him as he walked away after the robbery, but he was not able to see the face

of the man who robbed his friend. Christian described the man who robbed him as a black man wearing black clothes, but he could not give further details.

{¶24} Immediately after the incident, the boys went to Steven's house on White Ave. where he lived with his parents, and his mother called the police. When the police arrived, the boys told Officer Michael Murphy that they had been robbed at gunpoint by two black males wearing black. When Officer Murphy asked if there was anything that stood out about the individuals, he "was told that one of the males had * * * a Bluetooth earpiece in his ear." Officer Murphy conveyed this information to the dispatcher so that the other police cruisers in the area could search for the suspects.

{¶25} While Officer Murphy met with the victims, other officers began to search for the suspects. Officer Paul Hill testified that Officers Falcone and Murphy described the suspects as "Two black males, one in all black clothing, [] and a Bluetooth." While riding northwest in his cruiser on White Ave. with his partner, Officer Hill noticed two males matching the description walking toward his vehicle. One of the suspects, Chapman, was dressed in all black clothing and wearing a Bluetooth earpiece that was blinking. Before the officers were able to turn on their lights and siren, the two men saw the cruiser and began to run. Officer Hill exited the cruiser and pursued Chapman on foot. Before Officer Hill was able to ultimately catch and detain Chapman, he noticed Chapman reach into his pocket and throw a gun into the grass. Officer Hill recovered the firearm that Chapman had discarded, which was a chrome-colored .38 revolver. Officer Hill's partner, Officer John Turnure, pursued the other suspect but was unable to detain him.

{¶26} After Chapman had been taken into custody, Officer Murphy brought the boys to view Chapman to see if they could identify him. When Officer Murphy arrived at the location

where Chapman had been apprehended, he assisted in removing Chapman, who was handcuffed, from the paddy wagon. The boys were in the back of the cruiser approximately 20 feet from Chapman at the time they observed him. Steven testified that the area was well lit, and a spot light was shined on Chapman so that the boys could see him. Steven further testified that he identified the man in custody, Chapman, as the individual who had robbed him. Specifically, Steven testified that he "remembered his face [from] when he first crossed the street." At trial, Officer Murphy identified Chapman as the individual that Steven had identified on the night of the incident.

{¶27} The evidence presented at trial was sufficient to convict Chapman of aggravated robbery. The boys described the men who robbed them at gunpoint as black men wearing black clothing, and Steven added that the man who stuck a gun in his back was wearing a Bluetooth earpiece. When police began to search in the area of the robbery for the suspects, they observed Chapman and another man take off running after they saw the police cruiser. As Officer Hill pursued Chapman on foot, he saw Chapman discard a firearm. After Chapman was taken into custody, Steven identified him as the individual who had robbed him. This evidence, when construed in the light most favorable to the State, was sufficient to establish that Chapman was one of the individuals who robbed Steven and Christian.

**Manifest Weight**

{¶28} A review of the record suggests that the weight of the evidence supports Chapman's aggravated robbery convictions. Chapman fit the boys' initial description of a black male wearing black clothing and a Bluetooth earpiece. When police saw Chapman walking near the scene of the incident shortly after it occurred, he took off running before the police could activate their lights and siren, and subsequently discarded a firearm during the pursuit. Shortly

after Chapman had been detained, Steven identified Chapman as the man who had robbed him. Though Christian was not able to identify Chapman as one the men who participated in the robbery, Christian acknowledged during his testimony that the fact that a gun was pointed into his stomach during the incident caused him to turn his head away, and he did not see the suspects' faces. Chapman correctly notes that Steven testified that he thought the gun Chapman used during the robbery was black, when in fact the gun Chapman tossed during the chase was chrome colored. However, Steven admitted during his testimony that he did not get a good view of the gun because it was stuck in his back, and he acknowledged that he saw just "the top of it." While Chapman points to the fact that neither victim described one of the assailants as having braided hair, Steven specifically testified that he was able to identify Chapman because he "remembered his face [from] when he first crossed the street." In light of Steven's identification of Chapman, the fact that he fit the boys' description of the assailants which included a Bluetooth earpiece, and the fact that Chapman was walking near the area of the incident and fled immediately upon seeing the police cruiser, we cannot conclude that this is the exceptional case where the jury clearly lost its way.

{¶29} Chapman's fifth and sixth assignments of error are overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR AND VIOLATED MR. CHAPMAN'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT FAILED TO SEVER THE ATTEMPTED MURDER AND FELONIOUS ASSAULT OFFENSE[S] FROM THE REMAINING CHARGES.

{¶30} In his second assignment of error, Chapman argues that the trial court committed plain error by failing to sever the attempted murder and felonious assault charges from the remaining charges. This Court disagrees.

**{¶31}** Defense counsel filed a motion to sever on September 15, 2011. As noted above, Chapman insisted that the motion be withdrawn at the pretrial conference on September 26, 2011. The trial court issued a journal entry prior to trial indicating that all of Chapman's motions had been withdrawn. Thus, Chapman couches his argument on appeal in terms of plain error.

**{¶32}** Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, ¶12.

**{¶33}** Chapman was ultimately convicted of the aggravated robbery charges in the original indictment, which stemmed from the June 20, 2011 incident involving Steven Thomas and Christian Williams. In the supplemental indictment, Chapman was charged with one count of attempted murder with a firearm specification, and one count of felonious assault with a firearm specification, in relation to a shooting that occurred on June 10, 2011. The State's theory of the case was that the gun Chapman discarded during the aggravated robbery on June 20, 2011, was the same gun used during the shooting which occurred on June 10, 2011. While the charges in both the original indictment and the supplemental indictment were tried together, Chapman was acquitted of the charges in the supplemental indictment.

**{¶34}** Chapman argues in his merit brief that trying all of the counts together was highly prejudicial and the trial court's failure to sever the counts constituted reversible error. As noted above, the trial judge encouraged Chapman to consult with defense counsel regarding the

possible benefits of litigating the motion to sever. Defense counsel stated on the record that he thought Chapman had a strong argument in support of the motion to sever. Despite these statements by defense counsel and the trial judge, Chapman insisted that he wanted to withdraw all of his motions pending before the court. When the trial judge specifically asked about the motion to sever, Chapman indicated that he thought there were strategic advantages to trying the counts together, stating "I feel like it would be better to try my cases together because some of the evidence that's used in one case I would be able to present it in a second case if they're tried together." The trial judge warned Chapman that while such a strategy could be helpful, it could also be harmful. Chapman responded that he understood but he thought he would "get through it." As Chapman made a tactical decision to withdraw his motion to sever and proceed to trial on all of the charges, thus waiving the issue, he is now barred from asserting on appeal that the trial court's failure to sever the counts resulted in a manifest miscarriage of justice. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 75, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23 (a waived right cannot be the basis for a claim of plain error under Crim.R. 52(B)).

{¶35} Chapman's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED PLAIN ERROR AS A MATTER OF LAW WHEN IT FAILED TO DECLARE A MISTRIAL UPON LEARNING OF OUTSIDE INFLUENCES ON THE JURY IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶36} In his third assignment of error, Chapman argues that the trial court committed plain error by not declaring a mistrial. This Court disagrees.

{¶37} In support of his position that the trial court committed plain error by not declaring a mistrial, Chapman argues that he was prejudiced when two jurors witnessed him in restraints outside the courtroom. Chapman argues that this fact, coupled with the fact that another juror overheard a conversation between a witness and a deputy, resulted in the tainting of the jury and necessitated the declaration of a mistrial.

{¶38} The transcript reveals that prior to the third day of trial, the court reporter noticed two jurors observe Chapman in restraints outside the courtroom. The trial judge separately called each juror into chambers and, in the presence of counsel, asked each juror a series of questions on the record. When Juror No. 12 indicated that she saw Chapman in restraints, the trial court inquired as to whether that would impact her ability to be fair and impartial. Juror No. 12 responded that it would not. Defense counsel then inquired as to whether seeing Chapman in chains would leave any impression with respect to guilt or innocence, and also whether what she saw would impact her determination regarding identity, which was a critical issue in the case. Juror No. 12 answered both questions in the negative. The trial judge then instructed Juror No. 12 not to disclose what she had observed to her fellow jurors. After Juror No. 12 was excused, Juror No. 10 entered the judge's chambers and went through a similar inquiry. In response to the trial judge's questions, Juror No. 10 said that observing Chapman in restraints would have no bearing on her ability to be fair in deliberations, and that what she observed would not influence her determination of guilt or innocence. Juror No. 10 further stated that she had not disclosed what she had observed to any other jurors. Defense counsel then asked if what Juror No. 10 had observed would impact her ability to make an impartial determination about the case, and whether it would impact her ability to be fair in considering the evidence presented during trial. Juror No. 10 answered both questions in the negative.

{¶39} The second incident occurred on the morning of the fourth day of trial, when Juror No. 4 was going through the metal detectors at the entrance to the courthouse. Juror No. 4 overheard a deputy ask a woman why she kept coming in and out of the courthouse. The woman, who happened to be the mother of the victim from the June 10, 2011 incident and a witness at trial, responded "Well, my son is the one that got shot back in June." Juror No. 4 told the bailiff about what she had heard, and the trial judge called her into chambers in the presence of counsel for a discussion on the record. The trial judge asked whether the experience would impact her ability to be fair, and Juror No. 4 stated that it would not. Defense counsel asked if she had overheard any other conversation other than that single statement, and Juror No. 4 answered, "No." Defense counsel further inquired as to whether the brief encounter would impact Juror No. 4's impressions on the case, and she answered in the negative.

{¶40} The manner in which the trial court handled the two incidents discussed above did not constitute plain error. In considering whether to order a mistrial, the trial judge must consider how the jury interpreted, and expectably will react to the out-of-court communication. *State v. Herring*, 94 Ohio St.3d 246, 259 (2002). Here, in each instance, the trial court individually called the jurors into chambers in the presence of counsel, and inquired as to whether the individual juror's ability to render a fair verdict had been altered. All three jurors stated that their experience did not impact their ability to be fair and impartial. The trial court provided both parties with an opportunity to question the jurors, and in each case defense counsel asked a series of questions. As nothing in the jurors' answers suggested that the incidents affected their ability to be impartial and render a fair verdict, the fact that the trial court did not declare a mistrial did not constitute plain error pursuant to Crim.R. 52(B).

{¶41} Chapman's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

MR. CHAPMAN WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶42} In his fourth assignment of error, Chapman argues that he was denied his right to effective assistance of counsel. This Court disagrees.

{¶43} In order to prevail on a claim of ineffective assistance of counsel, Chapman must show that "counsel's performance fell below an objective standard of reasonableness and that prejudice arose from counsel's performance." *State v. Reynolds*, 80 Ohio St.3d 670, 674 (1998), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Thus, a two-prong test is necessary to examine such claims. First, Chapman must show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. *State v. Keith*, 79 Ohio St.3d 514, 534 (1997), citing *Strickland*, 466 U.S. at 687. Second, Chapman must demonstrate that but for counsel's errors, there is a reasonable probability that the results of the trial would have been different. *Keith*, 79 Ohio St.3d at 534.

{¶44} Chapman raises two primary arguments in support of his ineffective assistance claim. First, Chapman argues that defense counsel rendered ineffective assistance by failing to properly challenge the show-up identification of Chapman by Steven Thomas. Chapman also asserts that defense counsel rendered ineffective assistance by withdrawing the motion to sever the counts in the indictment.

{¶45} As discussed above, defense counsel filed both a motion to suppress relating to the show-up identification, and a motion to sever the attempted murder and felonious assault charges from the remaining charges in the indictment. At the September 26, 2011 pretrial conference, defense counsel stated on the record that he thought the motions had merit, and that he was not in favor of withdrawing the motions. Chapman repeatedly stated that he never wanted the motions filed in the first place, and that he insisted on withdrawing them. At the end of the hearing, the following exchange then occurred on the record:

> Defense Counsel: Judge, my position is I would like to explore the motion to suppress. There was a show-up identification of my client as well as the motion to sever the robbery charge, which is the first six charges in the indictment from the last two which are the attempted murder for obvious prejudice it would inure my client if they were tried together[.] *** So having said all that, I would advise against him withdrawing all those motions, although I understand that he's been in custody and wants this to go forward and has his own reasons to keep these cases together. So for the record, I'm opposed to withdrawing those, but if my client wants to do that, I'm willing to withdraw the motions at this time.
>
> The Court: And that is what you want to do?
>
> The Defendant: Yes, ma'am.

{¶46} In light of Chapman's relentless insistence that all of the motions pending before the court be withdrawn, defense counsel's conduct did not fall below an objective standard of reasonableness. *Keith*, 79 Ohio St.3d 514, 534. Defense counsel filed a motion to suppress and a motion to sever on behalf of Chapman, and emphatically advised Chapman against withdrawing the motions. However, due to Chapman's unremitting position before the trial court that he wanted all of the motions withdrawn, defense counsel had no choice but to comply with his client's request. Thus, Chapman cannot prevail on his claim that defense counsel was ineffective.

{¶47} Chapman's fourth assignment of error is overruled.

**ASSIGNMENT OF ERROR VII**

THE CUMULATIVE EFFECT OF THE ERRORS DEPRIVED MR. CHAPMAN OF A FAIR TRIAL IN VIOLATION OF HIS RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶48} In his final assignment of error, Chapman contends that the cumulative effects of the errors at trial resulted in a violation of his due process rights. Under the cumulative error doctrine, a conviction may be reversed when the cumulative effect of the errors deprives a defendant of the constitutional right to a fair trial even though none of the errors, in isolation was prejudicial. *State v. DeMarco*, 31 Ohio St.3d 191 (1987), paragraph two of the syllabus. In the absence of multiple errors, the cumulative error doctrine does not apply. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 132.

{¶49} In this case, Chapman has not identified errors in the trial court proceedings, so it cannot be said that cumulative errors deprived him of a fair trial. *See State v. Taylor*, 9th Dist. No. 09CA009570, 2010-Ohio-962, ¶ 40. Chapman's seventh assignment of error is overruled.

III.

{¶50} Chapman's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

WHITMORE, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

DAWN M. KING, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.