[Cite as *State v. Byall*, 2019-Ohio-3132.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

STATE OF OHIO

    Appellee

    v.

JARED BYALL

    Appellant

C.A. No.    18AP0030

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF WAYNE, OHIO
CASE No.    2017 CRC-I 000222

DECISION AND JOURNAL ENTRY

Dated: August 5, 2019

---

CARR, Judge.

{¶1}    Appellant, Jared Byall, appeals the judgment of the Wayne County Court of Common Pleas. This Court affirms.

I.

{¶2}    In 2017, the Wayne County Grand Jury indicted Byall on a long list of offenses including multiple counts of rape, sexual battery, unlawful sexual conduct with a minor, and gross sexual imposition. The alleged victims were Byall's biological daughter, S.B., and his girlfriend's daughter, K.H. Byall pleaded not guilty to the charges at arraignment.

{¶3}    The matter proceeded to a jury trial where Byall was found guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(b) and two counts of rape in violation of R.C. 2907.02(A)(2). The jury also found Byall guilty of four counts of sexual battery, three counts of unlawful sexual conduct with a minor, and six counts of gross sexual imposition. The jury found

Byall not guilty of two counts of sexual battery and two counts of unlawful sexual conduct with a minor.

{¶4} The trial court imposed a sentence of 25 years to life for rape under count one of the indictment. With respect to the counts of rape contained in the third and fourth counts of the indictment, the trial court imposed a prison sentence of 11 years for each offense. The trial court imposed a five-year prison sentence for sexual battery under count eight of the indictment, as well as prison terms of 18 months on each of the two counts of gross sexual imposition contained in counts twenty and twenty-one of the indictment. The trial court ordered that the sentences for counts one, three, and four were to be served consecutively. The sentences for counts eight, twenty, and twenty-one were to be served concurrently. The trial court determined that the remaining counts were allied offenses. Byall was classified as a Tier III sex offender.

{¶5} On appeal, Byall raises three assignments of error.

II.

## ASSIGNMENT OF ERROR I

APPELLANT'S CONVICTION FOR COUNT ONE, RAPE, R.C. 2907.02(A)(1)(b), WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶6} In his first assignment of error, Byall contends that his conviction for rape as contained in the first count of the indictment was against the weight of the evidence. This Court disagrees.

{¶7} When a defendant argues that his conviction was contrary to the weight of the evidence, this Court must review all of the evidence before the trial court:

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way

and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶8} Byall was convicted of rape in violation of R.C. 2907.02(A)(1)(b). Count one of the indictment further specified that Byall purposely compelled the victim to submit by force or threat of force. R.C. 2907.02(A)(1)(b) states, "No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." This Court has recognized that the trial court shall impose a prison sentence of 25 years to life if an offender is convicted of violating R.C. 2907.02(A)(1)(b) and, in so doing, compels the victim to submit by force or the threat of force. *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 27, citing R.C. 2907.02(B) and R.C. 2971.03(B)(1)(c).

{¶9} "Sexual conduct" is defined as "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).

{¶10} On appeal, Byall contends that he "did not compel S.B. to submit at all but, if he did, it was not by force or the threat of force." Byall points to S.B.'s testimony at trial in support of his position that "even if this sexual assault occurred, S.B. obviously did not feel she was compelled to submit[.]" Though Byall acknowledges that K.H. testified that he used force against S.B., Byall asserts that K.H.'s testimony was not credible.

{¶11} Byall lived with his girlfriend, L.H., in a trailer in Orville, Ohio. Byall and L.H. had one daughter together, S.B., who lived with them. L.H.'s daughter from a prior relationship, K.H., as well as Byall's three sons from a prior relationship also lived in the trailer.

{¶12} At trial, K.H. testified regarding multiple incidents where she was sexually assaulted by Byall. One incident occurred inside the bathroom of the trailer when K.H. was 14 years old. Though K.H. tried to resist, Byall pushed her down on the toilet, pulled down her pants, and inserted his penis in her vagina. S.B., who was ten years old, walked into the bathroom as the incident was unfolding. K.H. explained that when S.B. tried to run away, Byall stated "oh no, no, come here" and then proceeded to "move[] her onto the toilet." S.B. testified that after Byall seated her on the toilet, he directed her to "relax and just lean back." Byall proceeded to engage in vaginal intercourse with S.B. S.B. testified that Byall was on his knees during the incident and that he only stopped when she started "kicking up and crying." Byall told S.B. not to tell her mother what happened. Both S.B. and K.H. testified that K.H. remained in the bathroom and was seated on the edge of the bathtub when Byall assaulted S.B. Byall's hands remained on S.B.'s stomach throughout the incident. During her testimony, K.H. explained that S.B. told Byall to "stop" but he refused to cease. K.H. further indicated that when she asked Byall to leave S.B. alone, Byall told her to "shut up." After Byall turned away from S.B., he reinitiated vaginal intercourse with K.H.

{¶13} Byall points to several portions of the record in support of the notion that the testimony offered by S.B. and K.H. was not credible. Byall highlights inconsistencies between the two children's testimony at trial regarding what transpired during the bathroom incident. When S.B. was asked if Byall made her engage in sexual intercourse, she initially responded, "[y]es." When asked how Byall made her do that, however, S.B. stated, "He – no he didn't. I'm sorry." S.B. subsequently testified that she did not feel like she had to "let him do that to [her]." K.H., on the other hand, suggested that Byall acted aggressively and forced S.B. to submit. Moreover, K.H. gave detailed testimony regarding a separate incident where she was raped by Byall in the trailer's garage. Byall notes that the evidence regarding the results of a medical examination performed on K.H. were inconsistent with several segments of her testimony regarding the garage incident. Byall stresses that during a conversation with a case worker following the garage incident, K.H. made no mention of previous assaults involving S.B.

{¶14} Byall testified on his own behalf and insisted that he would not do anything to harm S.B. and K.H. Though Byall made a statement while in jail that he had sexual relations with K.H., he maintained during his testimony that he only said that because he mistakenly thought that he would be released from jail if he made an admission.

{¶15} A thorough review of the record reveals that Byall's manifest weight challenge is without merit. The Supreme Court of Ohio has "recognize[d] the coercion inherent in parental authority when a father sexually abuses his child." *State v. Eskridge*, 38 Ohio St.3d 56, 58 (1988). It is now well settled that "[a] person in a position of authority over a child under thirteen may be convicted of rape of that child with force pursuant to R.C. 2907.02(A)(1)(b) and (B) without evidence of express threat of harm or evidence of significant physical restraint." *State v. Kudla*, 9th Dist. Summit No. 27652, 2016-Ohio-5215, ¶ 12, quoting *State v. Dye*, 82

Ohio St.3d 323 (1998), syllabus. Here, S.B. was ten years old at the time she was raped by her father. The State presented evidence at trial that showed that when S.B. attempted to run out of the bathroom, Byall refused to let her leave. Byall placed S.B. on the toilet and proceeded to engage in vaginal intercourse with her until she began kicking and crying. Byall's hands remained on S.B.'s stomach during the incident and, according to K.H., Byall refused S.B.'s plea to stop. Though Byall challenges the credibility of the testimony offered by S.B. and K.H., this Court has repeatedly held that the trier of fact was in the best position to evaluate the credibility of the witnesses and this Court will not overturn the trial court's verdict on a manifest weight challenge simply because the jury chose to believe certain witnesses' testimony. *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16, citing *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances, where there was ample evidence that Byall used his parental authority and superior physical stature to engage in vaginal intercourse with his daughter, we cannot conclude that this is the exceptional case where the trier of fact clearly lost its way when it determined that he acted with force.

{¶16} Byall's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO DECLARE A MISTRIAL WHEN A STATE'S WITNESS TESTIFIED IN FRONT OF THE JURY REGARDING APPELLANT'S REFUSAL TO SPEAK TO LAW ENFORCEMENT.

{¶17} In his second assignment of error, Byall contends that the trial court abused its discretion when it refused to declare a mistrial during the testimony of Detective Alex Abel of the Wayne County Sheriff's Office. Specifically, Byall contends that his right to remain silent under the Fifth Amendment was undermined when Detective Abel testified that Byall refused to speak with law enforcement after he was taken into custody. Byall further contends that

Detective Abel's testimony subverted the policy considerations behind the Fifth Amendment and that the trial court's refusal to declare a mistrial encourages underhanded tactics by the State. This Court disagrees.

**{¶18}** There are no exact standards to apply in evaluating whether a trial court should declare a mistrial in a particular case. *State v. Plant*, 9th Dist. Wayne No. 2599, 1991 WL 81650, *2 (May 15, 1991). "Instead, the law grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in [his or her] courtroom warrants the declaration of a mistrial." *Id*. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin*, 62 Ohio St.3d 118, 127 (1991); *State v. Mercer*, 9th Dist. Summit No. 26361, 2013-Ohio-1527, ¶ 7.

**{¶19}** An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶20}** It is well settled that "[t]he right of an accused to remain silent, enunciated in *Miranda v. Arizona*, 384 U.S. 436 (1966), carries with it an implicit assurance that his silence will not be used against him." *State v. Harris*, 9th Dist. Lorain No. 11CA009991, 2012-Ohio-2973, ¶ 5, citing *Doyle v. Ohio*, 426 U.S. 610, 618 (1976). While the *Doyle* court held that it was impermissible to use post-arrest silence for the purposes of impeachment, "the United States Supreme Court later expanded its prior holding to prohibit the use of an accused's silence at trial as substantive evidence of guilt." *Harris* at ¶ 5, *Wainwright v. Greenfield*, 474 U.S. 284, 292 (1986).

**{¶21}** The State called Detective Abel during its case in chief. At the outset of his testimony, Detective Abel described his involvement in the investigation. The Wayne County

Child Advocate Center ("CAC") recorded its interviews with K.H. and S.B. Detective Abel traveled to the CAC to pick up the disks containing the interviews. After reviewing the interviews, he delivered the disks to the evidence custodian. During this discussion, the follow exchange occurred:

| | |
|---|---|
| [The State]: | Okay, after you reviewed the interview what did you do? |
| [Detective Abel]: | I determined I was going to interview Mr. Byall in regards to some new information that we had learned. Went to the - - into the jail to interview Mr. Byall on the 16th and - - I'm sorry, the 12th and he refused to - - |
| [Defense Counsel]: | Objection. Can we approach, please? |
| The Court: | Sure. |

{¶22} Thereafter, a discussion was held outside the presence of the jury. Defense counsel insisted that the law was clear that the State could not call a witness to testify to the fact that Byall refused to talk to law enforcement. The State agreed with defense counsel's statement and asked the trial court to strike the testimony, and, if necessary, give a curative instruction. When the trial court asked the State what else would be included in Detective Abel's testimony, the State noted that Detective Abel would testify regarding an oral swab that was sent for testing. Defense counsel then moved for a mistrial on the grounds that "the only reason he was called to testify to the jury [was that] he refused to talk[.]" Defense counsel stated that it was "pretty clear" that any issues pertaining to chain of custody and DNA was taken care of by the parties' stipulations. The State insisted that Detective Abel was not called to testify regarding Abel's silence. At that point, the trial court indicated that it would give a curative instruction.

{¶23} The trial court then gave the jury the following instruction:

All right, at this point the jury should disregard the witness's last statement about the defendant refusing to talk to him. It's not relevant to this case as you're well aware, as was discussed in voir dire. The defendant has a right not to testify or

say anything. It's inappropriate for that to even be commented on at this point so you should disregard what was just brought forth.

**{¶24}** Detective Abel concluded his testimony by explaining his role in the obtaining the oral swabs from Byall. After there was an initial mishap during the investigation regarding the DNA collection, Detective Abel obtained two additional oral swabs and sent them to Bureau of Criminal Investigation for testing.

**{¶25}** Under these circumstances, Byall's argument is without merit. As an initial matter, defense counsel made a timely objection just as Detective Abel was beginning to testify regarding his attempt to speak with Byall. When defense counsel objected, the trial court promptly addressed the issue outside the presence of the jury and determined that it would give a curative instruction. Though Byall suggests that Detective Abel's statement was overwhelmingly prejudicial, the record shows that the reference was ephemeral and that the trial court immediately took steps to address the issue. In its curative instruction, the trial court pinpointed the issue and ordered the jury to disregard the testimony. "A jury is presumed to follow the instructions, including curative instructions, given it by a trial judge." *State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 37, quoting, *State v. Garner*, 74 Ohio St.3d 49, 59 (1995). Furthermore, while Byall suggests that Detective Abel's statement "could have" altered his decision to testify in his own defense, this argument is purely speculative and is not akin to affirmatively demonstrating error on appeal. *State v. Patel*, 9th Dist. Summit No. 24024, 2008-Ohio-4692, ¶ 55 ("It is the duty of the appellant to demonstrate error on appeal and to include appropriate citations to the transcripts and record in support of that argument."). Under these circumstances, we cannot say that the trial court's decision to deny Byall's motion for a mistrial constituted an abuse of discretion.

**{¶26}** The second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

APPELLANT WAS DENIED DUE PROCESS WHEN A SEATED JUROR OBSERVED SHERIFF'S DEPUTIES ESCORT APPELLANT INTO COURT IN THE MIDDLE OF HIS TRIAL.

{¶27} In his final assignment of error, Byall contends that his due process rights were violated when a juror observed deputies escorting him into the courthouse. This Court disagrees.

{¶28} The trial in this matter took place over the course of several days. After hearing the testimony of several witnesses on the first day of trial, the jury appeared for service the following morning. The transcript indicates that on April 10, 2018, the trial court was notified that Juror 21 observed the deputies bring Byall into the courthouse. The following exchange occurred on the record:

| | |
|---|---|
| The Court: | All right, * * * apparently this morning you came in to serve as you normally would for jury duty and you happened to encounter the Sheriff's deputies bring the defendant in? |
| Juror: | Yes. |
| The Court: | Did that cause you any concern to see the defendant being brought in by Sheriff's deputies? |
| Juror: | No. |
| The Court: | No. Did you think anything of it? |
| Juror: | No. |
| The Court: | Okay, [defense counsel], do you want to inquire at all? |
| [Defense Counsel]: | Just one question. Do you think having seen what you saw that that will affect your ability to be fair and impartial in this case? |
| Juror: | No. |
| [Defense Counsel]: | Okay, sir, thank you. |
| The Court: | All right, sorry to bother you this morning but we just want to make sure everything's working fine. |

Juror:                That's okay. We're good.

The Court:          All right, thanks.

At the conclusion of this exchange, the State called its next witness and the trial continued.

{¶29} On appeal, Byall contends that the trial court violated his due process rights when it failed to remove the juror in question. Though Byall acknowledges that the trial court and defense counsel inquired into the juror's ability to be impartial and fair, Byall suggests that the exchange was "brief and perfunctory."

{¶30} Though defense counsel inquired of the juror during the aforementioned exchange, he neither set forth a due process argument on the record, nor did he make a timely request for the juror to be removed. Where a party fails to raise a timely objection before the trial court, the party forfeits all but plain error on appeal. *State v. Roy*, 9th Dist. Lorain No. 13CA010404, 2014-Ohio-5186, ¶ 68.

{¶31} To constitute plain error, the error must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings. *State v. Tichon*, 102 Ohio App.3d 758, 767 (9th Dist.1995). A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶12. "In order to succeed on a plain error claim, the appellant must demonstrate that but for the errors he alleges, the outcome of the trial would clearly have been different." *State v. Thomas*, 9th Dist. Summit No. 26893, 2014-Ohio-2920, ¶ 28, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996).

{¶32} Byall has not demonstrated that the trial court committed plain error in this case. The record is somewhat limited with respect to the details of what exactly the juror observed. The trial court properly inquired of the juror in question as to whether his observations would

impact his ability to be fair and impartial. *See State v. Chapman*, 9th Dist. Summit No. 26175, 2013-Ohio-357, ¶ 40. The trial court also provided defense counsel with an opportunity to ask questions to the juror. *Id.* at ¶ 40. The juror was resolute in his position that there would be no issue. As nothing in the juror's answers suggested that he would be hindered in rendering a fair and impartial verdict, the fact that the trial court did not dismiss the juror did not rise to the level of plain error.

{¶33} The third assignment of error is overruled.

### III.

{¶34} Byall's assignments of error are overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

                                                            _____

                                                            DONNA J. CARR
                                                            FOR THE COURT

TEODOSIO, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

MATTHEW J. MALONE, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.