[Cite as *State v. Morris*, 2011-Ohio-6594.]

STATE OF OHIO                )                    IN THE COURT OF APPEALS
                            )ss:                  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT            )

STATE OF OHIO                                     C.A. No.       25519

    Appellee

    v.                                           APPEAL FROM JUDGMENT
                                                 ENTERED IN THE
RICO L. MORRIS                                   COURT OF COMMON PLEAS
                                                 COUNTY OF SUMMIT, OHIO
    Appellant                                    CASE No.     CR 09 11 3544

DECISION AND JOURNAL ENTRY

Dated: December 21, 2011

BELFANCE, Presiding Judge.

{¶1}   Rico Morris appeals his conviction for possession of cocaine. For the reasons set forth below, we affirm.

I.

{¶2}   Based on information from a confidential informant, police obtained a warrant to search Mr. Morris' house and its curtilage. The police officers discovered a small quantity of crack cocaine inside Mr. Morris' house and a significantly larger quantity of crack cocaine in a van parked in his driveway.

{¶3}   Mr. Morris moved to suppress the evidence, but the trial court denied his motion. A jury convicted Mr. Morris of possession of crack cocaine but failed to agree on the charges of trafficking and possessing criminal tools. The trial court sentenced him to four years imprisonment.

{¶4} Mr. Morris has appealed, raising five assignments of error for review. For ease of discussion, we have rearranged his assignments of error.

II.

**ASSIGNMENT OF ERROR II**

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED FROM A SEARCH WARRANT THAT WAS BASED UPON AN AFFIDAVIT THAT LACKED PROBABLE CAUSE."

{¶5} In Mr. Morris' second assignment of error, he argues that the affidavit submitted by Detective Timothy Harvey in support of the search warrant failed to establish probable cause. However, the copy of the affidavit submitted with the record on appeal lacks a signature page. Given that neither Mr. Morris nor the State contends that Detective Harvey failed to sign his affidavit, this Court can only conclude that the copy of the affidavit included in the record on appeal is incomplete. Furthermore, we are unable to determine whether only the signature page is missing or whether other parts of the affidavit are also missing. As we cannot conduct a review on an incomplete record, we must presume regularity in the proceedings below. See *State v. Gates*, 9th Dist. No. 25435, 2011-Ohio-5631, at ¶5.

{¶6} Mr. Morris' second assignment of error is overruled.

**ASSIGNMENT OF ERROR III**

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN DENYING DEFENDANT'S MOTION TO SUPPRESS THE EVIDENCE AND HOLDING THAT A WARRANT TO SEARCH THE CURTILAGE INCLUDES THE RIGHT TO SEARCH AN AUTOMOBILE PARKED IN THE DRIVEWAY."

{¶7} Mr. Morris argues that the search warrant did not permit the police to search the van parked in his driveway because the van was not mentioned specifically in the search warrant and because a van located in a driveway is not included in the curtilage of a home. He also

argues that the van could not be searched because it was not his van as evidenced by the fact that it was not titled in his name.

{¶8}    The trial court held a hearing on Mr. Morris' motion to suppress, but the parties did not present any evidence.  Instead, Mr. Morris' counsel argued that the term "curtilage" did not include the van parked in the driveway.  The State countered that some Ohio courts have concluded that the curtilage included vehicles parked in the driveway.  Mr. Morris argued that those cases were distinguishable because Mr. Morris, unlike the defendants in those cases, did not own the vehicle in question.  The trial court then questioned whether Mr. Morris could assert that his Fourth Amendment rights were violated if he did not own the van.  The trial court overruled Mr. Morris' motion to suppress.  The trial court's journal entry did not set forth its reasoning but simply denied the motion.

{¶9}    "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted."  (Internal quotations and citations omitted.)  *Rakas v. Illinois* (1978), 439 U.S. 128, 133-134.  Accordingly, Mr. Morris could not challenge the legality of the search unless he claimed some legitimate privacy interest in the property searched or seized.  Id. at 134.   The unintended consequence of denying ownership or possessory interest in the van is that he cannot also claim that his Fourth Amendment rights were violated.  See, e.g., Id. at 130, 138 (Defendants who "did not own the automobile [searched] * * * nor * * * assert that they owned the [items] seized[]" could not object to the lawfulness of the search despite being passengers in the car.); but, cf., *State v. Carter* (1994), 69 Ohio St.3d 57, 58, 63 (holding that passengers in a vehicle can challenge the legality of a stop because "they are * * * seized, and their freedom of movement is * * * affected").

{¶10} Based on the arguments made at the suppression hearing, we cannot say that the trial court erred when it denied Mr. Morris' motion to suppress as it could have reasonably concluded that, because Mr. Morris denied that he had any ownership or possessory interest in the vehicle, he could not demonstrate that his Fourth Amendment rights were violated by its search. Accordingly, Mr. Morris' third assignment of error is overruled.

## ASSIGNMENT OF ERROR V

"THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT OVERRULED DEFENDANT'S [CRIM.R.] 29(A) MOTION FOR JUDGMENT OF ACQUITTAL BECAUSE THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶11} Mr. Morris addresses his fourth and fifth assignments of error together in his brief. However, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. While sufficiency is a test of whether the evidence presented is adequate to sustain a verdict as a matter of law, weight of the evidence "concerns the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other." (Internal citations and quotations omitted.) (Emphasis sic.) Id. at 387.

{¶12} A review of a Crim.R. 29 motion is a review of the sufficiency of the evidence. *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, at ¶33. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams,* 9th Dist. No. 24731, 2009–Ohio–6955, at ¶18, citing *Thompkins,* 78 Ohio St.3d at 386. The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273. The

State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. Id.

{¶13} The jury convicted Mr. Morris of possessing crack cocaine, a violation of R.C. 2925.11(A). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Because the jury also found that Mr. Morris possessed 25 grams or more, but less than 100 grams, of crack cocaine, Mr. Morris' violation of R.C. 2925.11(A) constituted a first-degree felony. Former R.C. 2925.11(C)(4)(e). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2925.01(K) defines "[p]ossess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶14} In making his Crim.R. 29 motion, Mr. Morris argued that the State failed to present sufficient evidence to show that Mr. Morris possessed the cocaine found in the van. However, Tina Person testified that Mr. Morris asked her to get the van from the towing company and that he took possession of the van. She also testified that she observed Mr. Morris driving the van. The police, when searching Mr. Morris' home, found the keys to the van and, when they searched the van, found 39.2 grams of crack cocaine on the middle seat under a towel. They also discovered Mr. Morris' lease for his apartment inside the glove box. The State also presented evidence that after Mr. Morris' arrest, he spoke with his mother from jail. During the recorded conversation, Mr. Morris told his mother that he had not been trafficking to anyone, but that he would "take the possession."

**{¶15}** Accordingly, when viewed in the light most favorable to the State, there was sufficient evidence presented for a reasonable trier of fact to determine that Mr. Morris possessed the van and that he possessed the crack cocaine that was discovered inside of it. See *State v. Parker*, 9th Dist. No. 22979, 2006-Ohio-4866, at ¶5 ("Possession of the keys to a vehicle is a strong indicator that a defendant has control over the vehicle and all things found in the vehicle.") (Internal quotations and citations omitted.); see, also, *State v. Owens*, 9th Dist. No. 23267, 2007-Ohio-49, at ¶23 (noting that, while "evidence or factors, such as owning the premises or proximity to contraband, * * * on their own do not establish constructive possession[,] * * * viewing these factors together as a whole can be used as circumstantial evidence to establish constructive possession.") (Internal citations omitted.).

**{¶16}** His fifth assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

"DEFENDANT'S CONVICTION FOR POSSESSION OF COCAINE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**{¶17}** Mr. Morris concedes that he knowingly possessed the 3.2 grams of crack cocaine found in his house, a fourth-degree felony under former R.C. 2925.11(C)(4)(b), but challenges the jury's conclusion that he knowingly possessed the 39.2 grams found in the van in his driveway as being against the manifest weight of the evidence. We disagree.

**{¶18}** In reviewing a challenge to the weight of the evidence, the appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

{¶19} The jury convicted Mr. Morris of possessing crack cocaine, a violation of R.C. 2925.11(A). R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." Because the jury also found that Mr. Morris possessed 25 grams or more, but less than 100 grams, of crack cocaine, Mr. Morris' violation of R.C. 2925.11(A) constituted a first-degree felony. Former R.C. 2925.11(C)(4)(e). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). R.C. 2925.01(K) defines "[p]ossess" or "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."

{¶20} It is undisputed that, when the police executed the search warrant for Mr. Morris' home, they discovered 3.2 grams of crack cocaine on a dresser in a bedroom and an additional 39.2 grams of crack cocaine under a blanket in the van parked in the driveway. It is also undisputed that the police found the keys for the van in Mr. Morris' home and that the van had been in Mr. Morris' driveway for months. Furthermore, Ms. Person testified that Mr. Morris presented the title to her and asked her to take title of the van because it had been towed and Mr. Morris could not sign to retrieve it because he lacked a driver's license. Ms. Person testified that she did this favor for Mr. Morris and, after she retrieved the van from the towing company, gave Mr. Morris the keys. According to Ms. Person, she had no further contact with Mr. Morris concerning the van, but did see him occasionally driving it. Based on Ms. Person's testimony, the fact that Mr. Morris was in possession of the keys to the van, and the fact that the van was

parked in Mr. Morris' driveway, the jury could reasonably have determined that Mr. Morris was in possession and control of the van and, by extension, the items found inside.

{¶21} However, Mr. Morris contends that the jury lost its way because Tiauna Land, his girlfriend at the time of the search, testified that many other people in the neighborhood had access to the van. He also argues that the jury should not have believed Ms. Person's testimony because she had originally told the police a different version of events than the one she testified about at trial.

{¶22} With regard to the latter argument, Mr. Morris' counsel thoroughly cross-examined Ms. Person about what she had originally told the police. In other words, the jury was aware that Ms. Person had altered her story and could judge her credibility accordingly. Furthermore, we are unconvinced that Ms. Person's original story, that she had sold the van to Mr. Morris instead of merely retrieving it from the towing company, significantly affects the fact that Mr. Morris had the keys to a van that was parked in his driveway for months prior to the police's discovery of the crack cocaine.

{¶23} Turning to Ms. Land's testimony, Mr. Morris essentially argues that the fact that other people had access to the van means that the State could not prove that he possessed the items found in there beyond a reasonable doubt. While Ms. Land testified that she had seen people using the van, she also testified that she had not observed anyone use the van for approximately one month prior to the search. Furthermore, Ms. Land also testified that Mr. Morris gave some people permission to use the van, which undermines his claim that he did not have possession and control of the van.

{¶24} Finally, Mr. Morris argues that his conviction is against the manifest weight of the evidence because the van was not titled in his name. It is true that this fact is undisputed.

However, the lack of title ownership does not necessarily negate a possessory interest in the vehicle. In light of the evidence outlined above, the jury could have reasonably concluded that Mr. Morris had a possessory interest in the van, notwithstanding the lack of title ownership. The fact that his name was not on the van's title was not dispositive proof that Mr. Morris did not have possession of the van or control over its contents.

{¶25} Ms. Person testified that she had retrieved the van at Mr. Morris' request, had given him the keys, and had seen him driving the van. The jury was aware of her potentially contradictory statements to the police and could judge her credibility accordingly. While Ms. Land testified that other people had used the van, some by breaking in through a window, she also testified that Mr. Morris gave people permission to use the van and that she had not observed anyone in the van for over a month prior to the discovery of the crack cocaine. It is also undisputed that Mr. Morris had the keys to the van and that the van had been in his driveway for months. Accordingly, based on a thorough review of the record, we cannot say that the jury lost its way when it determined that Mr. Morris possessed the crack cocaine found in the van, and, thus, we cannot conclude that his conviction for possessing crack cocaine in a quantity in excess of 25 grams but less than 100 grams was against the manifest weight of the evidence.

{¶26} Mr. Morris' fourth assignment of error is overruled.

### ASSIGNMENT OF ERROR I

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY DENYING DEFENDANT'S MOTION FOR MISTRIAL DUE TO JUROR MISCONDUCT."

{¶27} In Mr. Morris' first assignment of error, he argues that the trial court abused its discretion when it denied his motion for a mistrial. While neither party disputes that juror

misconduct occurred, in order to be entitled to a mistrial, Mr. Morris was also required to establish prejudice. See *State v. Keith* (1997), 79 Ohio St.3d 514, 526.

{¶28} "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." *State v. Franklin* (1991), 62 Ohio St.3d 118, 127, citing *Illinois v. Somerville* (1973), 410 U.S. 458, 462-463 and *Arizona v. Washington* (1978), 434 U.S. 497, 505-506. When analyzing a case of alleged juror misconduct, it must be determined (1) whether misconduct actually occurred and (2) whether the misconduct materially prejudiced the defendant's substantial rights. *State v. Herb*, 167 Ohio App.3d 333, 2006-Ohio-2412, at ¶6. When juror partiality is alleged, the trial court should hold a hearing so that the complaining party may have an opportunity to prove actual bias. See *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, at ¶160; see, also, *State v. Herring* (2002), 94 Ohio St.3d 246, 258-259.

{¶29} However, the trial court has broad discretion concerning matters of juror misconduct and potential bias. *Herring*, 94 Ohio St.3d at 259, quoting *State v. Phillips* (1995), 74 Ohio St.3d 72, 88-89. Accordingly, an appellate court reviews the denial of a motion for a mistrial for an abuse of discretion. See *Herring*, 94 Ohio St.3d at 259-260. An abuse of discretion implies that the trial court's attitude was "unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

{¶30} During a break in jury deliberations, Juror 8 rode with Mr. Morris in an elevator. While they were in the elevator, Juror 8 told Mr. Morris that her father had some drug problems, that she understood where Mr. Morris was coming from, and that the jury deliberations were going to take a while. Mr. Morris reported the incident to the trial court, which proceeded to question Juror 8 about the incident. Juror 8 initially denied having had the conversation with Mr. Morris but eventually admitted that she had told Mr. Morris about her father's addiction. Juror 8

also stated that the jury was still deliberating. Nevertheless, Juror 8 consistently denied having brought the conversation up during the jury's deliberations.

{¶31} Before making a final decision on Mr. Morris' motion for a mistrial, and with agreement of counsel, the trial court questioned the jury forewoman. The forewoman told the trial court that Juror 8 had mentioned to her that she had spoken with Mr. Morris and that two other jurors were potentially within hearing distance at the time. The forewoman, however, said she was unable to understand what Juror 8 said because she mumbled and also definitively stated that Juror 8 had not shared the conversation with the jury as a whole during deliberations. Based on the statements of Juror 8 and the forewoman, the trial court denied Mr. Morris' motion for a mistrial, determining that, if any party was prejudiced, it was the State because of Juror 8's statement of sympathy to Mr. Morris.

{¶32} There is no question that Juror 8 committed misconduct; therefore, the issue is whether Mr. Morris suffered any prejudice as a result of the misconduct. The trial court evaluated the credibility of Juror 8 and the jury forewoman. The forewoman related that Juror 8 told her that she had felt awkward in the elevator and did not know what to do. Importantly, Juror 8 denied ever telling the jury about the incident, which the forewoman corroborated. In evaluating credibility, the trial court was entitled to believe or disbelieve all or part of the statements of Juror 8 and the jury forewoman. Based upon its assessment of credibility, the trial court concluded that there was no indication that the jury was affected by the improper conversation between Mr. Morris and Juror 8. Upon careful review of the record, we cannot conclude that the trial court's determination that Mr. Morris' substantial rights were not violated by the conversation in the elevator was unreasonable. Accordingly, we cannot say that the trial court abused its discretion when it denied Mr. Morris' motion for a mistrial.

**{¶33}** His first assignment of error is overruled.

III.

**{¶34}** Mr. Morris' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.