[Cite as *State v. Thomas*, 2014-Ohio-2920.]

STATE OF OHIO   )     IN THE COURT OF APPEALS
          )ss:     NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO        C.A. No.   26893

   Appellee

   v.           APPEAL FROM JUDGMENT
                ENTERED IN THE
JESSICA L. THOMAS      COURT OF COMMON PLEAS
                COUNTY OF SUMMIT, OHIO
   Appellant        CASE No.  CR 2012-06-1655

DECISION AND JOURNAL ENTRY

Dated: June 30, 2014

CARR, Judge.

{¶1} Appellant, Jessica Thomas, appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} This matter arises out of a fatal traffic accident involving Jessica Thomas and her fiancé, Jeffrey Spencer, that occurred during the early morning hours of March 31, 2012. Spencer tragically passed away due to injuries suffered during the accident. The Summit County Grand Jury indicted Thomas on one count of aggravated vehicular homicide, and three counts of operating a vehicle under the influence of alcohol or drugs. After Thomas initially pleaded not guilty to the charges, the matter proceeded to a jury trial. The jury found Thomas guilty of all four counts in the indictment. The three counts of operating a vehicle under the influence of alcohol or drugs were merged for the purposes of sentencing, and the trial court imposed a total prison sentence of three years.

**{¶3}** On appeal, Thomas raises three assignments of error.

II.

**ASSIGNMENT OF ERROR I**

DEFENDANT-APPELLANT THOMAS' CONVICTIONS WERE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

**{¶4}** In her first assignment of error, Thomas argues that her convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. This Court disagrees.

**Sufficiency Challenge**

**{¶5}** Thomas argues that her convictions for aggravated vehicular homicide and operating under the influence of alcohol or drugs were not supported by sufficient evidence because the State failed to prove beyond a reasonable doubt that she was operating the 2001 Ford Taurus at the time of the accident. Thomas specifies in her merit brief that the State failed to prove that she was driving the vehicle during its case-in-chief, and that the trial court erred by failing to grant her Crim.R. 29 motion for acquittal.

**{¶6}** Crim.R. 29(A) provides, in relevant part:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

**{¶7}** A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations. *State v. Gulley*, 9th Dist. Summit No. 19600, 2000 WL 277908 (Mar. 15, 2000). When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to

determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶8} Thomas was convicted of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1), which states, "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of [R.C.] 4511.19." Thomas was also convicted of three counts of operating a vehicle under the influence of alcohol or drugs in violation of R.C. 4511.19(A)(1)(a), R.C. 4511.19(A)(1)(b), and R.C. 4511.19(A)(1)(j)(vii).

{¶9} R.C. 4511.19(A)(1) states, "No person shall operate any vehicle * * * within this state, if, at the time of the operation, any of the following apply:

> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.

> (b) The person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.

> * * *

> (j)    * * * the person has a concentration of any of the following controlled substances or metabolites of a controlled substance in the person's whole blood, blood serum or plasma, or urine that equals or exceeds any of the following:

> * * *

> (vii)   The person has a concentration of marihuana in the person's urine of at least ten nanograms of marihuana per milliliter of the person's urine or has a

concentration of marihuana in the person's whole blood or blood serum or plasma of at least two nanograms per milliliter of the person's whole blood or blood serum or plasma.

**{¶10}** As noted above, Thomas' central argument on appeal applies to all four of her convictions as she asserts that the State failed to prove that she was the driver of the vehicle at the time of the accident.

**{¶11}** The State presented evidence at trial demonstrating that after going out on the evening March 30, 2012, Thomas and Spencer were involved in a car accident on State Route 241 in Springfield Township. At approximately 2:40 a.m., a woman named Angelique Woodward called 911 after noticing that a vehicle had gone off the road. While there were no eye witnesses to the accident, several first responders and law enforcements officials were immediately dispatched to the scene. Upon arrival, they discovered that a 2001 Ford Taurus had gone off State Route 241 and crashed into a tree. The car had flipped onto its left side and its front end was pressed up against the base of the tree. The vehicle involved contained a bench seat with an adjustable armrest that could be moved up and down. Thomas' lower body was trapped between the steering wheel and the driver's seat. Spencer's body was partially ejected from the vehicle through the driver's side window. Because the vehicle had flipped on its left side, first responders found Spencer lying on the ground outside the vehicle with his left leg trapped behind inside the vehicle. The State presented testimony from a certified technical crash investigator who suggested that neither person involved in the crash appeared to be wearing a seatbelt. Lieutenant Brian White of the Springfield Fire Department testified that Thomas was "pinned underneath the steering wheel and underneath the dash and she was wedged between the driver's seat." Lt. White further testified that he observed Thomas' body in a position that seemed natural for someone who had been sitting in the driver's seat when the car came to rest

after the crash. One of Lt. White's colleagues, Steven Schultz, a firefighter and paramedic for Springfield Township, specified that Thomas' feet were trapped near the pedals of the vehicle. Other witnesses who responded to the scene also testified that Thomas' body was trapped in the driver's seat of the vehicle.

{¶12} Emergency personnel had to cut the steering wheel in order to extract Thomas from the vehicle. The State presented uncontroverted evidence by way of test results from the State Highway Patrol's forensic laboratory that indicated that Thomas was over the lawful blood-alcohol limit at the time of the accident, and also that Thomas was under the influence of marijuana at the time of the accident.

{¶13} Schultz further testified that he spoke with Thomas after she was removed from the front driver's seat of the vehicle and placed in the ambulance. When asked if she had been drinking alcohol that evening, Thomas replied that she "had a shit ton." When Schultz further inquired into whether Thomas had been driving the vehicle, Schultz heard her say, "uh-huh," which he interpreted as an affirmative response.

{¶14} The evidence presented during the State's case-in-chief was sufficient to demonstrate that Thomas was driving the vehicle at the time of the accident. Several witnesses who responded to the accident testified that they found Thomas trapped in a position in the vehicle that made it apparent that she had been driving, with her lower body trapped under the steering wheel and her upper-body wedged in the driver's seat. Moreover, Schultz testified that Thomas responded in the affirmative when asked if she had been driving the vehicle. This evidence, when construed in the light most favorable to the State, was sufficient to demonstrate that Thomas was the driver of the vehicle.

**Manifest Weight Challenge**

{¶15}  A conviction that is supported by sufficient evidence may still be found to be against the manifest weight of the evidence. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997); *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the fact[-]finder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982).  An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Otten* at 340.

{¶16}  In her merit brief, Thomas advocated a manifest weight argument "identical to the argument set forth under the prior section concerning the sufficiency of the evidence," but urged the Court to consider the testimony of the three defense witnesses as well as the State's one rebuttal witness.  In support of her position, Thomas places particular emphasis on the testimony of James Crawford, who testified on behalf of the defense as a qualified expert in accident reconstruction.

{¶17}  During Crawford's testimony, he suggested that the occupants of the vehicle would have been jarred by three separate collisions during the course of the crash.  Namely, the passengers in the vehicles would have been affected when the vehicle hit a fire hydrant, and then subsequently when the vehicle hit a large embankment and then proceeded to strike a tree.

Crawford specified that the latter two impacts were the most significant, with the collision with the embankment commencing the process by which Spencer was eventually ejected from the vehicle. According to Crawford, the collision with the embankment caused the driver to slide against the window with the front passenger sliding to the driver's side of the vehicle. Crawford continued that the driver would have been ejected from the vehicle when the car struck the tree, with the passenger coming to rest near the driver's seat. Crawford concluded that based on his experience and analysis of this case, he believed it was Spencer who was driving the vehicle. On cross-examination, the State challenged Crawford's credibility on the basis that he used almost identical language in a report that he prepared for a separate case.

{¶18} Thomas also testified in her own defense. Thomas testified that she shared the Ford Taurus with Spencer, but that the car was registered in her name. On the night in question, Thomas and Spencer smoked marijuana together before going out to a club where they had several alcoholic beverages. Thomas testified that her last memory was calling her mother from the club to check on how the couple's child was doing. The next thing Thomas was able to remember was awaking in the hospital several days after the accident. Thomas did not have any recollection of who was driving at the time the accident occurred. In addition to testifying on her own behalf, Thomas also presented the testimony of Spencer's sister, Laura Ross, who confirmed that when she visited Thomas in the hospital, Thomas had no recollection of the accident.

{¶19} In rebuttal, the State called Sergeant John Thorne of the Ohio State Highway Patrol. Like Crawford, Sgt. Thorne was qualified as an expert in accident reconstruction. Sgt. Thorne sharply disagreed with Crawford's analysis of the crash, and opined that it was Thomas who was driving the vehicle. While Sgt. Thorne agreed that there were three significant impacts

throughout the course of the crash, Sgt. Thorne indicated that the driver would have remained in the driver's seat given the nature of the crash. Sgt. Thorne suggested the front passenger would have passed over the driver as the car sustained multiple impacts and ultimately rotated on its left side. During cross-examination, defense counsel challenged Sgt. Thorne's credibility on the basis that his educational background did not include formal schooling in physics or engineering.

{¶20} After a careful review of the record, this Court cannot conclude that the trier of fact created a manifest miscarriage of justice in concluding that Thomas was the driver of the vehicle. As mentioned above, the State provided extensive testimony from emergency responders and law enforcement officials who observed Thomas pinned in the driver's seat of the vehicle. With respect to the expert testimony offered at trial, Thomas' expert testified that it was Spencer who was driving the vehicle at the time the accident occurred, while the State's expert indicated it was Thomas who was behind the wheel. Each party challenged the credibility of the expert testimony offered by the opposing party. Though the parties presented conflicting testimony in this case, we note that "the trier of fact was in the best position to evaluate the credibility of witnesses, and this Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge simply because the trial court chose to believe certain witnesses' testimony over the testimony of others." *State v. Ross*, 9th Dist. Wayne No. 12CA0007, 2013-Ohio-522, ¶ 16, *State v. Crowe*, 9th Dist. Medina No. 04CA0098-M, 2005-Ohio-4082, ¶ 22. Under these circumstances where the State presented ample evidence that Thomas was driving the vehicle at the time of the accident, we cannot conclude that this is the exceptional case where the trier of fact clearly lost its way.

{¶21} This first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT PERMITTED THE STATE OF OHIO TO ELICIT EXPERT TESTIMONY FROM LAY WITNESSES.

**{¶22}** In her second assignment of error, Thomas argues that the trial court erred by permitting the State to elicit expert testimony from lay witnesses. Specifically, Thomas argues that it was reversible error for the trial court to allow multiple lay witnesses to refer to Thomas as the driver of the vehicle based on their observations at the scene when they were not qualified as experts in accident reconstruction. This Court disagrees.

**{¶23}** Evid.R. 701 states that "[lay] witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." An appellate court reviews a trial court's decision pertaining to the admission of evidence under Evid.R. 701 for an abuse of discretion. *Urbana ex rel. Newlin v. Downing*, 43 Ohio St.3d 109, 113 (1989). An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶24}** Numerous emergency responders and law enforcement officials who responded to the scene of the accident were called to testify in this matter. During their testimony, several of those witnesses referred to Thomas as the "driver" of the vehicle based on their perceptions of her position in the driver's seat and the manner in which her lower body was trapped between the steering wheel and the driver's seat. During the opening statements, defense counsel objected to this testimony on the basis that the lay witnesses were not qualified to offer expert opinions on matters of accident reconstruction and physics. The State responded that it would not be

soliciting opinion testimony, and that it intended to ask witnesses about what they observed and how they went about conducting the investigation. The trial court overruled the objection on the basis that the witnesses were permitted to testify regarding their observations at the scene of the accident pursuant to Evid.R. 701, as well as explain the reasoning underpinning their investigation.

{¶25} Though several witnesses referred to Thomas as the driver of the vehicle when describing their perceptions of the crash site, defense counsel did not object on each occasion. In support of his assignment of error, Thomas cites to only two portions of the transcript where the issue was preserved for appeal. *See State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6 (holding that a party forfeits all but plain error where it fails to object before the trial court). One instance was during the direct examination of Lt. Brian White. White referred to Thomas as the driver of the Ford Taurus on multiple occasions while describing what he observed upon arriving at the scene. After this happened multiple times, the State asked, "why did you describe the person pinned as the driver?" At that point, defense counsel objected. The trial judge overruled the objection but specifically instructed White, "Just [answer] based on what you observed. * * * [Y]ou're not supposed to give an opinion. Just explain why you used that phrase." Lt. White responded, "I used that phrase because she was pinned underneath the steering wheel at the driver's seat." In regard to Evid.R. 701, the trial judge made it clear that White could only testify as to what he perceived, and White's ensuing testimony was limited to a direct observation. White did not purport to offer an expert opinion, and he commented only regarding his perceptions at the scene. It follows that the trial court did not abuse its discretion in permitting the testimony.

{¶26} Defense counsel also objected during the redirect examination of Paramedic Andrew Marchand. Preceding the objection, on direct examination, Marchand referred to Thomas as the driver of the vehicle on multiple occasions without objection. On cross-examination, Marchand was asked if he was an expert in accident reconstruction, and he acknowledged that he was not. Subsequently, the first question asked on redirect examination was "Mr. Marchand, do you need an accident reconstructionist to tell you that the defendant * * * was the driver of that vehicle?" Defense counsel objected, and, after a sidebar, the trial court sustained the objection. The State argued the question was proper given that defense counsel had opened the door to the inquiry, but the trial court rejected this argument. Defense counsel then expressed concern that Marchand was essentially being permitted to offer expert testimony. The trial court reiterated that it was sustaining defense counsel's objection, and stated that while Marchand could testify regarding his observations at the scene which triggered his initial assumption that Thomas was the driver, he was not qualified to draw a conclusion as to who was driving the vehicle. The trial court further directed the State to "[l]eave the accident reconstruction out of it." Marchand subsequently testified that he had assumed Thomas was the driver based on everything he saw at the scene, particularly her position in the vehicle.

{¶27} As was the case with Lt. White, the trial court unambiguously directed Marchand to limit his testimony to his direct observations, as provided by Evid.R. 701. Marchand then confirmed that the inferences he drew at the crash site were based solely on his perception of the scene. As the trial court sustained defenses counsel's objection, underscored that Marchand was not an expert witness, and then made certain that Marchand limited his ensuing testimony to his perceptions at the scene, we cannot agree with Thomas' contention that the trial court abused its discretion.

{¶28} In her merit brief, Thomas also includes citations to the testimony several other witnesses. In those instances, however, defense counsel did not object to the testimony. This Court reviews an issue for plain error in cases where the appellant has otherwise forfeited the issue on appeal by failing to raise it below at a time when the trial court had the opportunity to correct the alleged error. *Dent* at ¶ 6. In order to succeed on a plain error claim, the appellant must demonstrate that but for the errors he alleges, the outcome of the trial would clearly have been different. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996); Crim.R. 52(B). Thomas has not set forth a plain error argument on appeal explaining how the result of trial would have been different but for this testimony, and it is not the duty of this Court to create a plain error argument on her behalf. *State v. Hairston*, 9th Dist. Lorain No. 05CA008768, 2006-Ohio-4925, ¶ 11.

{¶29} The second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENDANT-APPELLANT THOMAS' MOTION FOR A NEW TRIAL PURSUANT TO CRIMINAL RULE 33(A)(2) AND (4).

{¶30} In her third assignment of error, Thomas argues that the trial court improperly denied her motion for a mistrial. This Court disagrees.

{¶31} In support of her third assignment or error, Thomas argues that the trial court should have granted her motion for a mistrial because the jury was contaminated when juror number two made comments during deliberations regarding research he had done outside the courtroom. Thomas further asserts that the trial court failed to adequately explore juror number two's statement that the foreman was "bullying" other members of the jury, and that removing

juror number two bolstered the State's case because juror number two had questioned the State's theory of the case during deliberations.

{¶32} A trial court enjoys broad discretion in dealing with matters of juror misconduct and potential bias. *State v. Morris*, 9th Dist. Summit No. 25519, 2011-Ohio-6594, ¶ 29, citing *State v. Herring*, 94 Ohio St.3d 246, 259 (2002). Thus, an appellate court reviews the trial court's denial of a motion for a mistrial for an abuse of discretion. *Morris* at ¶ 29.

{¶33} "When analyzing a case of alleged juror misconduct, it must be determined (1) whether misconduct actually occurred and (2) whether the misconduct materially prejudiced the defendant's substantial rights." *Morris* at ¶ 28, citing *State v. Herb*, 167 Ohio App.3d 333, 2006-Ohio-2412, ¶ 6 (9th Dist). Thus, even when juror misconduct has, in fact, occurred, a complaining party must establish prejudice. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 42, citing *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The Supreme Court of Ohio has maintained a "long-standing rule * * * not [to] reverse a judgment because of the misconduct of a juror unless prejudice * * * is shown." *Adams* at ¶ 45, quoting *State v. Hipkins*, 69 Ohio St.2d 80, 83 (1982).

{¶34} "In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror." *State v. Schmitz*, 9th Dist. Lorain Nos. 11CA010043, 11CA010044, 2012-Ohio-2979, ¶ 15, quoting *State v. Phillips*, 74 Ohio St.3d 72, 89 (1995). Moreover, "[a] juror's belief in his or her own impartiality is not inherently suspect and may be relied upon by the trial court." *Schmitz* at ¶ 15. "One may not know or altogether understand the imponderables which cause one to think what he thinks, but surely one who is trying as an honest [person] to live up to the sanctity of his [or her] oath is well qualified to say whether he [or she] has an unbiased mind

in a certain matter." *State v. Gunnell*, 132 Ohio St.3d 442, 2012-Ohio-3236, ¶ 30, quoting *Phillips*, 455 U.S. at 217, fn. 7.

{¶35} A review of the trial transcript reveals that on February 20, 2013, after the jury had entered into deliberations, the trial court was notified by the foreman that juror number two had conducted an investigation outside of the courtroom. The trial judge called juror number two into chambers and, with all of the attorneys of record present, engaged in an inquiry about what had transpired. During that exchange, juror number two admitted to driving by the scene of the accident, as well as inspecting two vehicles similar to the Ford Taurus involved in the crash. He conceded that viewing the passenger compartment of the vehicles helped to confirm his prior understanding of the location of the air bag sensors. Juror number two also admitted to using a tape measure to measure the windows of his own vehicle. After discussing the nature of his investigation, juror number two acknowledged that he had shared his findings with the other jurors during deliberations. He also speculated that the reason the foreman had reported him was that they had differing views about the case, and that the foreman was "bullying" members of the jury.

{¶36} Over the objection of defense counsel, the trial court discharged juror number two. After the trial court handled the dismissal, defense counsel requested that the trial court voir dire all of the remaining jurors to determine whether it was appropriate to declare a mistrial. The trial court complied with defense counsel's request, and subsequently called each of the remaining jurors into chambers to answer a series of questions. Specifically, each juror was told that the trial court did not want each individual to disclose their position with respect to the ultimate resolution of the case. The trial judge then proceeded to ask each juror (1) whether juror number two had attempted to share any outside information; (2) whether any information shared

by juror number two would impact the juror's ability to decide the case based on the evidence properly admitted at trial; (3) and whether there were any other unusual dynamics in the jury room of which the court might need to be aware. While the trial court did not deem it appropriate to brusquely ask each juror if the foreman had engaged in "bullying," the trial court did inquire as to whether there were any areas of concern transpiring during deliberations that should be brought to the court's attention. After the trial judge finished this inquiry, the attorneys of record were then given an opportunity to ask follow up questions.

{¶37} Each of the remaining jurors indicated that they had heard juror number two's comments about conducting outside research. Significantly, however, each juror made an unequivocal statement on the record that those comments would not impact their ability to render a fair and impartial verdict. Several jurors went as far as to say that the foreman immediately recognized the problematic nature of juror number two's comments and sought to ensure that no inappropriate information was considered during deliberations. Each juror also specified that there was nothing troublesome about the nature of the discourse in the jury room. While juror number seven made a reference to a few "alpha men" on the jury, that same juror clarified that those individuals had been "very helpful in expressing their views" and that it had been "a good dialogue." When specifically asked by defense counsel if the "alpha" personalities were overpowering or dominating in any way, juror number seven responded in the negative. Juror number ten made a point to say that the deliberations were going exactly as one would have expected.

{¶38} After careful consideration of the record, we cannot say that the trial court abused its discretion in denying defense counsel's motion for a mistrial. The trial court made a direct inquiry into whether juror number two's comments had impacted the sanctity of the

deliberations, and also whether any other troublesome dynamics had arisen during deliberations. While juror number two undoubtedly engaged in juror misconduct, there was no indication that said misconduct influenced the remaining jurors' ability to decide the case fairly and impartially. Each juror specifically testified that juror number two's comments would have no bearing on their ability to render a fair and impartial judgment. Moreover, each juror stated on the record that the deliberations had otherwise gone smoothly, and that healthy discussions about the evidence had taken place. Given the methodical nature of the trial court's inquiry as well as the responses offered by the jurors during the voir dire process, we cannot say that the trial court abused its discretion in denying the motion for a mistrial.

{¶39} Thomas' third assignment of error is overruled.

## III.

{¶40} Thomas' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
WHITMORE, J.
CONCUR.

APPEARANCES:

WILLIAM A. VASILIOU II, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.